[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14477

_____

Agency No. A099-034-964

XIAO LIN,

Petitioner,

versus

US ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 11, 2013)

Before PRYOR and HILL, Circuit Judges, and O'KELLEY,[*] District Judge.

PER CURIAM:

This petition requires us to determine whether an adverse credibility determination by an immigration judge is supported by substantial evidence when an asylum applicant makes inconsistent statements in his airport interview, his asylum application, and his testimony before the immigration judge. Xiao Lin, a citizen of China, applied for asylum in the United States, withholding of removal, and relief under the Convention Against Torture. He alleges that his local government was trying to arrest him for a third time based on his opposition to the seizure of a portion of his family farm. The immigration judge denied Lin's petition and made an adverse credibility determination based on inconsistencies in Lin's airport statement, the written statement of his application, and his testimony at the removal hearing. Lin appealed his decision to the Board of Immigration Appeal, which affirmed the denial of the petition for asylum and withholding of removal. Because the record supports the adverse credibility determination by the immigration judge and Lin waived his claim under the Convention by not appealing the denial of that claim to the Board, we dismiss in part and deny in part Lin's petition.

## I. BACKGROUND

---

[*]Honorable William C. O'Kelley, United States District Judge for the Northern District of Georgia, sitting by designation.

Xiao Lin is a citizen of China.  Lin attempted to enter the United States without a valid entry document.  Lin was interviewed by an immigration officer and informed the officer that he came to the United States because authorities in China wanted to arrest him for opposing his village committee.  Lin explained that the government had attempted to take a portion of his family farm without compensation.  Lin explained that, after he voiced his opposition, security officers came to arrest him the next day.  He was arrested a total of two times.  When asked about the treatment he received in jail, Lin explained that "[t]hey would not let me eat on time, they only gave me left over food, and they would not allow me to rest and they made me stand for a long time."  After his release from his second arrest, he hid to elude authorities and came to the United States for fear of future harm.

The Department of Homeland Security served Lin with a notice to appear and charged him as a removable alien who lacked valid entry documents when admitted to the United States.  Lin filed an application for asylum, 8 U.S.C. § 1158(a)(1); withholding of removal, id. § 1231(b)(3); and relief under the Convention based on his political opinion and membership in a social group.  In his application, Lin alleged that his family owned between one and two acres of land and that village officials told his family that their land would be procured to build houses.  Two officers arrested Lin after a village official heard him complaining about the procurement of his family's land.  He was released two days

3

later.  After a two-day detention, Lin explained his arrest and detention to his friends.  Around one month later, two officers arrested Lin for insulting the government and detained him.  According to Lin's application, he was given water, but no food during this second detention.

Lin explained in his application that, after he was released from his second detention, he and two of his neighbors wrote a letter to complain about the village government to the city government, and all three signed the letter.  A day later, Lin's father informed him that the two neighbors were detained and beaten and that officers were looking for Lin.  According to Lin's father, the neighbors told the officers that Lin had written the letter and "arranged the whole thing."

Lin testified at a removal hearing before the immigration judge.  Along with testifying about the facts that gave rise to the initial harassment against him, Lin testified that he was given no food and a "little bit of water" during his second detention.  He testified that he was forced to stand and not permitted to sleep.  He testified that he failed to mention in his application that he was deprived of sleep and forced to stand during his second detention because he either "forg[o]t" or did not know "how to write down all the information."  Lin found it difficult to explain how the government knew about the complaints that led to his second arrest, but suggested that a villager heard him complaining and told a government official.

4

Lin's counsel also told the immigration judge that his application was consistent with his airport statement.

The government argued that Lin's application should be denied as implausible and that his testimony was incredible. Although the Country Report tendered by Lin as part of his application stated that land activists were tortured and beaten, Lin conceded that he was not beaten. Although Lin's neighbors sent him their land records, which included their names, to include in his application, both refused to provide affidavits for fear that the government would identify them as helping Lin. Lin never mentioned the letter or his neighbors, including the beating that they suffered, during his airport interview.

The immigration judge denied Lin's application. The immigration judge made an adverse credibility determination based on inconsistencies in Lin's airport interview, application, and testimony. Lin testified that the most important elements of his persecution were the letter that he wrote and the beating of the other neighbors, but Lin did not mention the letter or the neighbors in his airport statement. In his application, Lin also stated that he was not given food during his second detention, but in his airport statement, Lin alleged that he was given "leftover food" during detention. Lin's airport statement also mentioned that he was forced to stand and prevented from sleeping, but these facts were omitted from his application. The immigration judge also ruled that Lin failed to meet his

5

burden of establishing eligibility for the Convention based on lack of credibility and that "his category has not risen to a group that would be so notorious or the government would be so opposed that they would single him out for torture."

The Board affirmed the denial of Lin's petition for asylum and withholding of removal. The Board found that Lin failed to mention his claim under the Convention in his appellate brief, so he had waived that claim. The Board also upheld the adverse credibility determination.

## II. STANDARD OF REVIEW

We review a decision of the Board as the final judgment, unless the Board expressly adopted the decision of the immigration judge. Ruiz v. Gonzales, 479 F.3d 762, 765 (11th Cir. 2007). Because the Board issued its own decision, but adopted the reasoning of the immigration judge with regard to the adverse credibility determination, we review both decisions. Id. We review credibility determinations under the substantial-evidence test. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1254–55 (11th Cir. 2006). We review "the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision," and, to reverse, we must determine that the record "compels" reversal. Id. at 1255.

## III. DISCUSSION

Lin argues that the adverse credibility determination by the immigration judge was not supported by substantial evidence. Under the REAL ID Act, 8 U.S.C. § 1158(b)(1)(B)(i)–(iii), an immigration judge must base his credibility determination on a totality of all of the circumstances, including "the consistency between the applicant's . . . written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made) [and] the internal consistency of each such statement," id. § 1158(b)(1)(B)(iii). Inconsistencies in the statements made by asylum applicants may be considered by immigration judges "without regard to whether [they] go[] to the heart of the applicant's claim." Id. And "an adverse credibility determination alone may be sufficient to support the denial of an asylum application." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005). Where an applicant "omitted entire incidents and other significant facts" from his airport interview, we have held that substantial evidence supports an adverse credibility determination. See Shkambi v. U.S. Att'y Gen., 584 F.3d 1041, 1051–52 (11th Cir. 2009).

Substantial evidence supports the adverse credibility determination based on the inconsistencies in Lin's interview, application, and testimony. Lin testified at his removal hearing and alleged in his application that he was not fed during his second detention, but in his airport interview, Lin stated that he was given leftover

food during detention.  Lin testified at the hearing and alleged in his application that he wrote a letter with two neighbors that caused those neighbors to be detained and beaten, but Lin failed to mention either the letter or the neighbors in his airport interview.  Lin stated in his airport interview that he was deprived of sleep and forced to stand during his detention, but Lin failed to mention sleep deprivation or being forced to stand in his application.  Although Lin argues that he told the immigration official conducting his airport interview that he was given food during his detention because he understood the official to be asking about only his first detention, even where explanations for the implausible aspects of an applicant's testimony are "tenable," we still may reverse only if "substantial evidence" does not support the adverse credibility determination.  Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1233 (11th Cir. 2006).

We cannot consider Lin's claim under the Convention.  "[A]bsent a cognizable excuse or exception, 'we lack jurisdiction to consider claims that have not been raised before the [Board].'"  Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (citing Sundar v. INS, 328 F.3d 1320, 1323 (11th Cir. 2003)).  Because Lin failed to raise his claim under the Convention before the Board, we must dismiss the portion of his petition that addresses the claim under the Convention for lack of subject matter jurisdiction.  See id.

## IV. CONCLUSION

8

We **DISMISS** the portion of Lin's petition that addresses his claim under the

Convention Against Torture and **DENY** the remainder of his petition.